CHICAGO GREAT WESTERN RY. CO. v. CHICAGO, BURLINGTON & QUINCY R. CO. et al.

No. 14445.

United States Court of Appeals Eighth Circuit.

Feb. 5, 1952.

Bryce L. Hamilton, Chicago, Ill. (Guy A. Gladson, Chicago, Ill., Paul J. Mc-Gough, Wright W. Brooks, Minneapolis, Minn., Winston, Strawn, Black & Towner, Chicago, Ill., and Faegre & Benson, Minneapolis, Minn., on the brief), for appellant.

William J. Quinn, St. Paul, Minn. (J. C. James, James I. Shields and Nye F. Morehouse, all of Chicago, Ill., Warren Newcome, Edwin C. Matthias and Hallan Huffman, all of St. Paul, Minn., C. W. Wright, Richard Musenbrock, Minneapolis, Minn., M. L. Countryman, Jr., Conrad Olson, St. Paul, Minn., M. L. Bluhm, Chicago, Ill., A. C. Erdall, S. W. Rider, Jr., and James L. Hetland, all of Minneapolis, Minn., on the brief), for appellees.

Before GARDNER, Chief Judge, and SANBORN and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from an interlocutory order granting a preliminary injunction in an equitable action brought by the seven railroad companies named as appellees against Chicago Great Western Railway Company, named as appellant herein. We shall refer to the parties as they were designated in the trial court. The action was for an injunction (1) requiring defendant to perform switching service between South St. Paul, Minnesota, on the west side of the Mississippi River, and a yard of defendant known as Hoffman Avenue Yard in St. Paul, Minnesota, on the east side of the Mississippi River; (2) enjoining defendant from further dismantling a bridge over the Mississippi River known in the record as the Terminal Bridge, in defendant's line of railroad between South St. Paul and Hoffman Avenue Yard and from abandoning switching service between South St. Paul and said Hoffman Avenue Yard, and (3) requiring defendant to reconstruct the Terminal Bridge and resume service thereover between South St. Paul and said Hoffman Avenue Yard.

Plaintiffs and defendant are common carriers by railroad. Defendant has two lines of railroad in St. Paul and South St. Paul, one designated as its main line and the other called the Terminal Line. The main line crosses the Mississippi River over a bridge known as the Robert Street Bridge and terminates near the Union Depot in St. Paul, while the Terminal Line extends from the Stockyards district of South St. Paul on the west side of the Mississippi River, to the Terminal Bridge on which it crosses to the east side and extends northward to the Hoffman Avenue Yard. This Terminal Line originally belonged to and was operated by the St. Paul Bridge and Terminal Railway Company but was leased by that company to Chicago Great Western Railroad Company, defendant's predecessor in interest, pursuant to authorization given by the Interstate Commerce Commission, and it was later acquired by defendant pursuant to authorization given by the Interstate Commerce Commission.

The Hoffman Avenue Yard is the interchange yard between plaintiffs and defendant on carload traffic consigned to and from the Stockyard district of South St. Paul, and prior to April 20, 1951, defendant handled traffic between the Stockyard district of South St. Paul and Hoffman Avenue Yard via the Terminal Line. In April, 1951, flood waters of the Mississippi River seriously undercut the center pier of the swing span portion of the Terminal Bridge so that service over the bridge was discontinued and the swing span was subsequently removed as a safety precaution. See Chicago B. & Q. R. Co. v. Chicago Great Western R. Co., 8 Cir., 190 F.2d 361. The so-called Terminal Line, prior to its acquisition by defendant's predecessor, was a common carrier terminal switching line known as the St. Paul Bridge & Terminal Railway Company. Plaintiffs' railway lines do not reach South St. Paul and the only access to the Stockyards district is through the switching facilities of the Terminal Line. As originally constructed it was intended to be operated for the express purpose of providing switching service for the handling of a large volume of carload shipments designated to or originating in the South St. Paul Stockyard district so that the stockyards, packing houses and the public generally could have the benefit of service by all competing carriers operating into the Twin Cities. The traffic handled is principally livestock inbound and livestock and packing house products outbound. When defendant's predecessor leased this Terminal Line the lease contained an option to purchase the properties and the Interstate Commerce Commission approved the lease subject to the condition that, "The present neutrality of handling traffic inbound, outbound, and switching by the St. Paul Bridge and Terminal Company shall be continued so as to permit equal opportunity for service to and from all lines now or hereafter reaching the terminal properties without discrimination as to routing or movement of traffic and without discrimination in the arrangement of schedules, promptness, or frequency of service, or other-

wise, as between cars destined to or received from competing carriers and irrespective of destination or route of movement."

From the time of obtaining control of this terminal property by lease defendant or its predecessor operated it and afforded a switching and transportation service between the connections with plaintiffs at Hoffman Avenue Yard in St. Paul and the South St. Paul Stockyards district over the Terminal Bridge, with an exception not here material. This switching service was performed under defendant's tariffs. Defendant's Tariff 30-O provides for switching charges between connections with plaintiffs at the St. Paul Hoffman Avenue Yard and certain industries in South St. Paul Stockyards district. No specific route between Hoffman Avenue Yard and South St. Paul Terminal is mentioned in this tariff.

Some time prior to the April 20, 1951, flood the Terminal Bridge became inoperative for several days while it was undergoing repairs, during which time defendant continued to interchange South St. Paul Stockyard district inbound and outbound carload traffic with plaintiffs at the Hoffman Avenue Yard in St. Paul. The alternate route then used is still available. That route is via the main line of defendant between South St. Paul and the St. Paul Union Depot and over the tracks of the Milwaukee Road between the Union Depot and the Hoffman Avenue yard, crossing the river by means of defendant's Robert Street Bridge. During such period the Milwaukee Road tracks were used under an agreement executed prior thereto and still in force and effect.

Following the flood of April 20, 1951, defendant declined to use the alternate route and refused to interchange traffic at Hoffman Avenue Yard but insisted that each of the plaintiffs interchange South St. Paul Stockyard district traffic at defendant's State Street Yard on a temporary basis and later on a permanent basis at the South Park Yard when the latter had been enlarged. There was evidence in the form of affidavits that prior to the flood of April, 1951, defendant had indicated to plaintiffs its intention to abandon Hoffman Avenue Yard as the interchange point for the South St. Paul Stockyards district traffic but the court expressed the view that that purpose or intention had not been satisfactorily established. There was proof that unless defendant were required to perform a switching and transportation service between South St. Paul Stockyards district and Hoffman Avenue Yard, plaintiffs and the shipping public would suffer substantial and irreparable injury.

On May 7, 1951, the trial court entered a temporary restraining order which required defendant to furnish service between South St. Paul and Hoffman Avenue Yard over the alternate route by way of the Robert Street Bridge over the main line of defendant between South St. Paul and St. Paul and over the line of the Milwaukee Road between the Union Depot in St. Paul and Hoffman Avenue Yard. Subsequent to hearing and on July 5, 1951, the trial court entered an order requiring defendant, pending final determination of the case to furnish transportation service between South St. Paul and Hoffman Avenue Yard over the alternate route at the rates set forth in defendant's Tariff 30-O, and requiring plaintiffs to give bond in the sum of $50,000, which they promptly did. This is the order from which the present appeal is prosecuted.

In seeking reversal defendant in substance contends: (1) the District Court was without jurisdiction to require switching service via the so-called alternate route on Minnesota intrastate traffic; (2) the switching service required by the order of the District Court is not authorized by defendant's tariff; (3) the District Court was without power to fix rates for switching service over the so-called alternate route.

The challenge to the court's jurisdiction is bottomed on the fact that there was not complete diversity of cit-

izenship between the plaintiffs and the defendant and hence, the court was without jurisdiction to require defendant to transport intrastate traffic over the alternate route. If this contention were sustained it might require a modification of the order so as to limit its effect to the transportation of interstate traffic, but there was presented a substantial federal question. It was claimed that defendant's action was violative of the conditions contained in the Interstate Commerce Commission's orders authorizing acquisition of the Terminal Line by defendant's predecessor. Where jurisdiction attaches by reason of a federal question it extends to the whole case and all its issues, federal or non-federal. Indeed, in such circumstances the court may decide the issue on state law alone, without deciding the federal question. Here it appears from the complaint, unaided by any anticipation or avoidance of defenses, that plaintiffs' claims were bottomed on a substantial federal question, and hence, the court had jurisdiction to dispose of all issues when a determination of such issues became necessary or appropriate in the administration of justice. Railroad Commission v. Pacific Gas & Electric Co., 302 U.S. 388, 58 S.Ct. 334, 82 L.Ed. 319; Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; Davis v. Wallace, 257 U.S. 478, 42 S.Ct. 164, 66 L.Ed. 325; Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375; California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323; Glenn v. Field Packing Co., 290 U.S. 177, 54 S.Ct. 138, 78 L.Ed. 252. The controlling rule is succinctly stated by the Supreme Court in Railroad Commission v. Pacific Gas & Electric Co., supra [302 U.S. 388, 58 S.Ct. 337], as follows: "Because of the federal question raised by the bill of complaint, the District Court had jurisdiction to determine all the questions in the case, local as well as federal."

The facts supporting plaintiffs' claim for relief apply equally to interstate and intrastate traffic. The services required of defendant are at least substantially the same regardless of whether the traffic be interstate or intrastate; in fact, the same tariff covering this traffic is on file with both the Interstate Commerce Commission and the Minnesota Railroad and Warehouse Commission. We are of the view the trial court had jurisdiction of all issues involved with power to determine them in due course.

The other contentions urged on behalf of defendant go to the merits of the controversy between the parties. These issues are substantial and cannot properly be determined in advance of the trial of the case on its merits. We in effect so held in Chicago, B. & Q. R. Co. v. Chicago Great Western R. Co., supra. Heedless of what we there said, counsel for defendant has briefed and argued the issues as if they had been determined on the merits and insist that we determine them on this appeal. This we must decline to do. The application here was addressed to the judicial discretion of the court. The temporary injunction issued to preserve the status quo until a hearing on the merits might be had, and the rights of the defendant are protected by appropriate bond. Orderly procedure in the circumstances here disclosed required that the parties try this case on its merits before attempting to present to this court the issues going to the merits of the action. City of Council Bluffs v. Omaha & C. B. St. Co., 8 Cir., 9 F.2d 246; Pratt v. Stout, 8 Cir., 85 F. 2d 172; Benson Hotel Corporation v. Woods, 8 Cir., 168 F.2d 694; Missouri-Kansas-Texas R. Co. v. Randolph, 8 Cir., 182 F.2d 996; Chicago, B. & Q. R. Co. v. Chicago Great Western R. Co., supra; Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 60 S.Ct. 517, 84 L.Ed. 774. In Missouri-Kansas-Texas R. Co. v. Randolph, supra [8 Cir. 182 F.2d 1000], where a somewhat similar situation was presented, we said: "So, in the instant case if, instead of perfecting this second appeal, the parties had tried the case on its merits there might then be presented to this court the issue going to the merits of the action. As said by us in Benson Hotel Corporation v. Woods, supra, 'It must be borne in mind that the parties did not submit the case to the trial court on its merits.

It cannot be gainsaid that the questions of law and fact to be ultimately determined in the action are grave and difficult. The decision of the trial court on granting the motion for preliminary injunction will not estop either of the parties on the trial of the case on its merits, nor would any determination of those questions by this court on appeal be binding on the trial court nor upon either of the parties in considering and determining the merits of the controversy.' "

Without attempting to determine the merits of any issue except that of jurisdiction, we affirm the order appealed from.