### DOESKIN PRODUCTS, Inc. v. UNITED PAPER CO.

No. 10471.

United States Court of Appeals Seventh Circuit.

April 10, 1952.

357

John F. Brezina, Chicago, Ill., for appellant.

Samuel W. Kipnis, Chicago, Ill., Armand E. Lackenbach, New York City, for appellee.

Before MAJOR, Chief Judge and KERNER and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The defendant, United Paper Company, appeals from a preliminary injunction against use by it of the trade-mark "Fawn," or the pictorial representation of a fawn or doe, as theretofore used by defendant in connection with the sale of paper napkins, or any trade-mark or pictorial representation confusingly similar thereto or to plaintiff's trade-marks, and the color combina-

tion of brown and yellow or of brown and pink.

The order for this preliminary injunction was entered in a suit by Doeskin Products, Inc., a New York corporation, against the defendant, a Delaware corporation, for trade-mark infringement and for unfair competition in the sale of paper napkins and other soft paper products. The plaintiff prayed for an injunction, for an accounting and for damages. The day after the filing of its complaint, the plaintiff filed a motion for a preliminary injunction. The defendant answered the complaint and both parties filed affidavits. After hearing arguments on the motion for a preliminary injunction, the District Court made findings of fact and conclusions of law in favor of the plaintiff and issued the injunction "pending the determination of this action, and until the further order of this Court."

In passing on this appeal the primary question confronting us is whether the trial court abused its discretion in issuing the preliminary injunction. Rule 65 of the Federal Rules of Civil Procedure, 28 U.S. C.A., provides, (a), that a preliminary injunction shall not be issued without notice to the adverse party, and, (c), without the applicant giving security, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. In oral argument in this court it was stated that the plaintiff had filed such a bond.

District Courts of the United States are given original jurisdiction of actions alleging infringement of trade-marks. 15 U.S. C.A. § 1121. They are also expressly empowered to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent Office." 15 U.S.C.A. § 1116. Rule 52(a) of the Federal Rules of Civil Procedure provides that in granting an interlocutory injunction the court shall find the facts specially and state separately its conclusions of law thereon, and further provides that such findings shall not be set

aside unless clearly erroneous. The District Court complied with the provisions of this Rule.

The courts have uniformly held that a petition for a preliminary injunction is addressed to the judicial discretion of the District Court. Deckert v. Independent Shares Corp., 311 U.S. 282, 290, 61 S.Ct. 229, 85 L.Ed. 189; United States v. Corrick, 298 U.S. 435, 437–438, 56 S.Ct. 829, 80 L.Ed. 1263; Rice & Adams Corp. v. Lathrop, 278 U.S. 509, 514, 49 S.Ct. 220, 73 L.Ed. 480. An order granting such an injunction will not be set aside by a Court of Appeals unless it is contrary to the principles of equity or the result of improvident exercise of judicial discretion. Meccano, Ltd., v. John Wanamaker, 253 U.S. 136, 141, 40 S.Ct. 463, 64 L.Ed. 822.

The purpose of a preliminary injunction is to preserve the object of the controversy in its then existing condition —to preserve the status quo. Missouri-Kansas-Texas v. Brotherhood of Ry. & S. S. Clerks, 7 Cir., 188 F.2d 302, 306. Or, as said in Benson Hotel v. Woods, 8 Cir., 168 F.2d 694, 696, "* * * the purpose of an injunction pendente lite is not to determine any controverted right, but to prevent a threatened wrong or any further perpetration of injury, or the doing of any act pending the final determination of the action whereby rights may be threatened or endangered * * *."

When a trial court is considering a petition for a temporary injunction, the proper exercise of its judicial discretion requires the weighing of the "conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction. (Citing cases.) And it will avoid such inconvenience and injury so far as may be, by attaching conditions to the award, such as the requirement of an injunction bond (such as was done in the instant case) conditioned upon payment of any damage caused by the injunction if the plaintiff's contentions are not sustained. (Citing cases.)" Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 675, 88 L.Ed. 834. In Perry v. Perry, D.C.Cir., 190 F.2d 601, 602, the court said: "When a motion for

preliminary injunction is presented to a court in advance of hearing on the merits, it is called upon to exercise its discretion 'upon the basis of a series of estimates: the relative importance of the rights asserted and the acts sought to be enjoined, the irreparable nature of the injury allegedly flowing from denial of preliminary relief, the probability of the ultimate success or failure of the suit, the balancing of damage and convenience generally.' "

Having these general rules in mind, let us examine the record on which the District Court in this action ordered the preliminary injunction. The complaint, filed March 5, 1951, alleged that the plaintiff was, and had been for many years, engaged in the business of manufacturing and selling, on a nation-wide basis, paper napkins and other soft paper products; that for more than ten years the plaintiff had been the owner of various registered trade-marks, the significant part of which had consisted of the word "Doe" or the pictorial representation of a doe; and that these trade-marks had been, and were being, used on the packages containing its products and in its advertising. The complaint also alleged that these trade-marks comprised plaintiff's most important and valuable asset.

Plaintiff alleged further that by reason of its high quality, the merchandise which plaintiff manufactured and sold had come to be favorably known throughout the United States and was purchased by the public in large quantities; that it had expended large sums of money in advertising its trade-marks and its paper products; and that the use of any of these trade-marks on any container of paper products or in any advertising matter concerning such products identified the products, so packaged or advertised, as having originated with the plaintiff.

The complaint further alleged that the defendant, knowing of all of these facts and "desiring to arrogate to itself the benefits and advantages of the plaintiff's said trade-marks, and the good will represented by said trade-marks, * * * did, in violation of plaintiff's exclusive rights to its said trade-marks, and for the purpose of injuring the plaintiff herein and to deceive, mislead and impose upon and confuse the customers of the plaintiff and the public in general, adopt * * *" a trade-mark deceptively similar to plaintiff's trade-marks; and that the trade-mark so adopted by the defendant consists of the notation "Fawn" and the pictorial representation of a fawn or doe.

The complaint further stated that the said acts of the defendant were an infringement on plaintiff's rights; that the defendant refused plaintiff's demand that defendant discontinue the use of the trade-mark "Fawn" and the use of its pictorial representation of a fawn or doe; and that by reason of defendant's said acts, plaintiff's trade had been, and would continue to be, unlawfully interfered with and would be irreparably injured and damaged by the divergence of customers, unless the defendant was enjoined pendente lite and permanently.

For a second cause of action the plaintiff alleged the same facts as above and the additional allegations that the defendant had adopted and was using on its paper napkin cartons a color scheme substantially similar to the color scheme which the plaintiff was using and had used for many years, and that, by reason thereof, confusion was likely to arise in the minds of the purchasing public as to the source or origin of the goods of the respective parties, and that, therefore, the defendant had been and was then unfairly competing with the plaintiff and was unlawfully interfering with the plaintiff's business.

On the day following the filing of its complaint, the plaintiff filed its motion for a preliminary injunction to which were attached the affidavits of Emanuel Katz, plaintiff's president, and of Armand E. Lackenbach, its attorney, and certain exhibits consisting of samples of the pasteboard cartons which the plaintiff and the defendant had been, and were then, actually using for the packaging of their paper napkins and other products.

Katz said that in November 1950 it was first brought to his attention that the de-

fendant was selling paper napkins under the trade-mark "Fawn," with the pictorial representation of a fawn or doe on the cartons; and that such cartons used by the defendant were obviously in simulation and imitation of plaintiff's trade-mark "Doe" and bore a substantial duplicate and simulation of the picture of the doe or fawn which constituted one of plaintiff's trade-marks.

The defendant's unverified answer admitted that "plaintiff's merchandise has been of excellent material and good workmanship and has been purchased in large quantities"; that plaintiff has used the notations "Doe" and "Doeskin" and the pictorial representation of a doe in connection with tissues and napkins as illustrated by containers and wrappers filed in this cause; and that the plaintiff was and is the owner of record of the United States trade-mark registrations as alleged in the complaint, although defendant questions the validity of the trade-mark of the pictorial representation of a doe because of its descriptiveness and descriptive significance.

Defendant's answer also denied that the defendant desired to arrogate to itself any benefits or advantages of plaintiff's trade-marks, good will or advertising. The defendant admitted its use of cartons for paper napkins (like plaintiff's exhibit 10) but denied bad faith and that such use violated any exclusive rights of plaintiff. Defendant admits that it refused plaintiff's demand to stop using the trade-mark "Fawn" and the pictorial representation of a fawn on its cartons. The defendant denied that the color scheme it used on its cartons was substantially similar to that used by the plaintiff and also denied that any of its acts in using its cartons would hinder, interfere with, injure or damage the plaintiff, or that any of its acts had been in unfair competition with the plaintiff.

With its answer the defendant filed the supporting affidavits of Louis Wellhouse, Jr., its president, and of Walter L. Gold, its sales manager. In addition to the facts shown by the complaint and admitted in the answer, these affidavits revealed that the defendant also distributed and sold its products throughout the major portion of the United States; that about November 1949 the defendant began using the trade-mark "Fawn," the picture of a fawn and the color scheme, all as shown on plaintiff's exhibit 10. These affidavits on behalf of the defendant pointed out differences in the cartons used by plaintiff and defendant which the affiants claimed distinguished the two and would prevent confusion to the public. These affiants stated that the color scheme used on the defendant's cartons was novel and distinctive and was originated and popularized by the defendant.

With these pleadings, affidavits and the physical samples of the cartons before it, and after having heard the arguments of counsel for the parties, the District Court made findings of fact and conclusions of law for the plaintiff on its motion for preliminary injunction and entered an order for the preliminary injunction.

The salient facts on which the District Court acted were not seriously disputed. The defendant did and still does contend that its carton, with the notation "Fawn," the pictorial representation of a small deer and its color scheme, is not confusingly similar to the plaintiff's carton, with its notation "Doeskin," the picture of a small deer and its color scheme, but the District Court had the actual samples of the cartons before it and we cannot say that its findings or conclusions were clearly erroneous.

■ We are not permitted to substitute our opinion for the finding of the District Court where, as here, the record furnishes a reasonable basis for the finding and action of the District Court. Defendant points to nothing in this record which would provide a reason for holding that the District Court, in entering this order, either violated the principles of equity or abused its judicial discretion.

■ Counsel for both parties both in their briefs and in their oral arguments before this court have addressed themselves primarily to the merits of this case. A question going to the merits of a case cannot be decided by us on appeal from an order granting an interlocutory injunction. As said in Meiselman v. Paramount, 4 Cir.,

180 F.2d 94, 96: "It is well settled that an application for interlocutory injunction may not be availed of to secure a piecemeal trial nor as a means whereby an opinion as to the applicable law may be extracted from the appellate court in advance of final hearing. Advantageous though this might be to the parties in some cases, the proper administration of justice requires * * * that the appellate court have the case completely before it when it declares the law applicable thereto."

In Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316, 60 S.Ct. 517, 520, 84 L.Ed. 774, the Supreme Court, in passing upon a case where a Three Judge District Court in granting a preliminary injunction against enforcement of a state statute had found that the act was unconstitutional and that the state officials had failed to comply with the act, said: "We think the court committed serious error in thus dealing with the case upon motion for temporary injunction. The question before it was not whether the act was constitutional or unconstitutional; was not whether the Commission had complied with the requirements of the act, if valid, but was whether the showing made raised serious questions, under the federal Constitution and the state law, and disclosed that enforcement of the act, pending final hearing, would inflict irreparable damages upon the complainants."

In Chicago Great Western Ry. Co. v. Chicago, Burlington & Quincy R. Co., 8 Cir., 193 F.2d 975, 978, the court said: "The other contentions urged on behalf of defendant go to the merits of the controversy between the parties. These issues are substantial and cannot properly be determined in advance of the trial of the case on its merits. * * * counsel for defendant has briefed and argued the issues as if they had been determined on the merits and insist that we determine them on this appeal. This we must decline to do. * * * The decision of the trial court on granting the motion for preliminary injunction will not estop either of the parties on the trial of the case on its merits, nor would any determination of those questions by this court on appeal be binding on the trial court nor upon either of the parties in considering and determining the merits of the controversy.'"

The order of the District Court granting the preliminary injunction is

Affirmed.