WESTINGHOUSE ELECTRIC CORPO-
RATION, Plaintiff-Appellant,

v.

FREE SEWING MACHINE CO. and
Apsco Products, Inc., Defendants-
Appellees.

No. 12277.

United States Court of Appeals
Seventh Circuit.

June 23, 1958.

James O. Smith, Chicago, Ill., John J. Cassidy, Jr., Chicago, Ill. (McDermott, Will & Emery, Chicago, Ill., of counsel), for plaintiff-appellant.

Douglas C. Moir, Chicago, Ill., Edward J. Wendrow, R. Lawrence Storms, Chicago, Ill., Karl C. Williams, Rockford, Ill. (Winston, Strawn, Smith & Patterson, Chicago, Ill., Williams, McCarthy & Kinley, Rockford, Ill., of counsel), for defendants-appellees.

Before DUFFY, Chief Judge, and MAJOR and HASTINGS, Circuit Judges.

DUFFY, Chief Judge.

The complaint herein charges unfair competition and trade-mark infringement. Plaintiff alleges the use by defendants of the mark "Free-Westinghouse" infringed its trade-mark "Westinghouse."

On June 27, 1957, plaintiff moved for a temporary injunction. The Court took no action on this motion until December 19, 1957 when a decree was entered which enjoined defendants from "directly or indirectly advertising or representing, by implication, innuendo or in any manner whatsoever, that their products embody any product manufactured by the plaintiff." However, the motion for a preliminary injunction was, in all other respects, denied, and it was affirmatively ordered that defendants be permitted to continue using the name "Free-Westinghouse" until the further order of the court. No findings of fact or conclusions of law were filed except as are contained in a very brief memorandum which the court filed on the day the decree was entered. Claiming the decree was wholly inadequate to give effective relief, plaintiff appealed.

Since 1886 plaintiff has continuously used its registered mark "Westinghouse" on its electrical products. Westinghouse

sells practically a complete line of electrical household appliances and identifies such appliances by its mark "Westinghouse". Plaintiff continuously carries on an extensive advertising campaign to popularize its products. In 1956, plaintiff spent over thirty-six million dollars advertising its products.

In this opinion, we shall ignore co-defendant Apsco Products, Inc.

Prior to 1918 and 1919, Free was well known in the sewing machine business, having manufactured and sold treadle sewing machines. "Free" had been the registered trade-mark of defendant Free since 1901. During 1918–1919, engineers of plaintiff and defendant worked together to create an electrical sewing machine. As a result, the so-called "built-in" or "turtle-back" motor was developed. Plaintiff patented this motor and entered into an agreement with Free whereby Westinghouse would manufacture the motors and Free was to manufacture the sewing machines. In some respects the direct evidence in this record as to the details of this agreement is meager. Defendant claims that during the negotiations an officer of plaintiff said with reference to the use of both names "Let's try it and see how it works out." Plaintiff maintains that the General Sales Manager of defendant suggested that the trade-mark of each company, to-wit: "Free" and "Westinghouse" be used on the contemplated electrical sewing machine to which each would contribute an important integral part. Plaintiff offered proof that in 1919 defendant's General Sales Manager set forth in a memorandum, terms and conditions upon which plaintiff granted defendant a license to use the mark "Westinghouse." Included in this memorandum was "It is my opinion, the Westinghouse Company, cannot stop us from using name Free-Westinghouse as long as it is clearly stated (as it is) on the machines, that it is manufactured by Free Sewing Machine Company and electrified by Westinghouse."

About eight months after the oral agreement was made, a patent license agreement was executed whereby Free was given the exclusive rights to purchase and use the patented motor. In this agreement the combination name "Free-Westinghouse" was not mentioned.

In 1923, Singer Manufacturing Company charged both Free and Westinghouse with infringing a Singer patent by the manufacture and use of the "built-in" motor on Free-Westinghouse machines. Plaintiff and Free settled the case by jointly paying Singer $10,000.00. Singer gave plaintiff a license to manufacture and sell the "built-in" motor to Free only, and gave Free a license to manufacture and sell a sewing machine using the "built-in" motor.

From 1919 to 1953, Free has continuously made and sold sewing machines under the trade name Free-Westinghouse. In 1939 the Vice President of plaintiff in charge of the Law and Patent Department of Westinghouse, wrote a letter to Free in which he stated that the use of the name Free-Westinghouse was co-extensive with the patent license agreement of November 8, 1919. On July 24, 1941, plaintiff informed Free that the patent and the patent license agreement for the "built-in" motor would expire the following month, and requested that the name Free-Westinghouse be discontinued as of that date. Under date of August 2, 1941, the Vice President and General Manager of Free wrote to Westinghouse claiming that the combination name "Free-Westinghouse" was a trade-name owned by Free. He further stated: "For more than twenty-three years we have been steady purchasers of your products and purchased from you during that period approximately $2,000,000. Throughout all that time we have retained your confidence, and respect. We intend that that relationship shall continue and we have a right to expect that upon reflection you will not attempt to visit upon us the disasterous consequences that would follow compliance with the demand of your letter of July 24."

In 1953 Free closed down its manufacturing facilities and it has not manufactured any sewing machines since that

date. In December, 1953, Free cancelled all orders for Westinghouse motors. Later, Free accepted more than twenty thousand Westinghouse motors in partial settlement of cancellation charges submitted by plaintiff. Free used many of these motors in selling out its inventory during the year 1954.

Plaintiff alleges that sometime in 1954 Free began using plaintiff's trade-mark on sewing machines which contained no product of Westinghouse. With reference particularly to machines imported from Italy and Germany, defendant would cover the trade-names on the machines by super-imposing a decalcomania containing the name "Free-Westinghouse." Plaintiff filed this suit in 1956 to stop the practice. After the suit was commenced, plaintiff asserts Free embarked upon a new venture, by importing Japanese sewing machines. Although plaintiff's motors were not used on these machines, Free sold them under the trade-name "Free-Westinghouse." Plaintiff then sought the preliminary injunction.

Apparently defendant claims that sometime either in or since 1919, the combined marks of Free and Westinghouse have become a new unity. Although defendant claims it is the sole owner of the combination "Free-Westinghouse" as a trade-name and as a trademark, defendant has never attempted to register the combination as its trademark. In 1951, it renewed the registration of its trade-mark "Free." At one point in its brief, defendant asserts "Free-Westinghouse" is a valid common-law trade-mark owned by it. In addition to claiming to be the owner of the combination name, defendant also asserts the defense of laches.

Upon an appeal from the granting or denial of a preliminary injunction, this Court has a very limited scope of review. Mytinger & Casselberry, Inc., v. Numanna Laboratories Corp., 7 Cir., 215 F.2d 382, 384. The sole issue here is whether the District Court abused its discretion. Weiner v. National Tinsel Mfg. Co., 7 Cir., 123 F.2d 96, 97; Doe-skin Products, Inc., v. United Paper Co., 7 Cir., 195 F.2d 356, 360–361.

Another principle which often comes into play in determining whether the trial court abused its discretion is that a preliminary injunction is a provisional remedy designed to preserve the status quo until the case can be heard upon the merits. Doeskin Products, Inc., v. United Paper Company, 7 Cir., 195 F.2d 356, 360–361. The status quo is the last uncontested status which preceded the pending controversy. Warner Bros. Pictures, Inc., v. Gittone, 3 Cir., 110 F.2d 292.

With these two principles in mind, we cannot say that the District Court abused its discretion. In fact, to have granted all the plaintiff asked would have decided this case upon the merits. Such is not the function of a preliminary injunction.

The order granting in part and denying in part the motion for a preliminary injunction is

Affirmed.