**AMERICAN MEDICAL ASSOCIATION,**
for itself and its members, et al.,
**Plaintiffs,**

v.

**Caspar W. WEINBERGER, Secretary of the United States Department of Health, Education & Welfare, Defendant.**

**No. 75 C 560.**

United States District Court,
N. D. Illinois, E. D.

June 5, 1975.

Newton N. Minow, Sidley & Austin, Robert D. McLean, Jack R. Bierig, Chicago, Ill., for plaintiffs.

Carol Mosley, Asst. U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OF DECISION

JULIUS J. HOFFMAN, Senior District Judge.

In this action by the American Medical Association and others for declaratory and injunctive relief from the enforcement of regulations promulgated by the defendant Secretary of the Department of Health, Education & Welfare, plaintiffs move for a temporary restraining order and a preliminary injunction pending disposition on the merits.

Plaintiffs include not only the American Medical Association (AMA), which has filed suit against HEW for the first time in its history, but also five physicians, six recipients of Medicare benefits, two recipients of Medicaid benefits, and three other persons not participating in Medicare or Medicaid but desiring medical treatment. The challenged regulations, 20 CFR § 405.1035(e)(f) and 45 CFR § 250.19(a)(1)(viii), condition Medicare and Medicaid reimbursement on the establishment by hospitals of "utilization review" committees which must assess the "medical necessity" of a patient's admission within 24 hours, or one working day, thereof. Plaintiffs allege that these regulations interfere, in violation of the First, Fifth, and Ninth Amendments, with a physician's right to practice medicine according to his best medical judgment and a patient's right to be treated according to the best medical judgment of his or her attending physician. The complaint also challenges the authority of the Secretary under the Social Security Act to issue the regulations, and asserts that the Secretary failed, prior to promulgation, to make

specific findings as required by the Administrative Procedure Act and the Fifth Amendment. Jurisdiction is based on 28 U.S.C. § 1331, which confers upon the district courts original jurisdiction over civil actions arising under the Constitution or laws of the United States and in which the amount in controversy exceeds $10,000.00.

As the court has stated on several occasions during these proceedings, it regards this case as critically important to patients and physicians throughout the country, as well as to the Secretary, who seeks to limit the increasing costs of federal health insurance. The court has therefore proceeded deliberately, with the benefit of extensive written and oral presentations by the attorneys for the plaintiffs and the defendant.

On February 20, 1975, plaintiffs filed their complaint and motion for preliminary injunction together with a forty-two page memorandum in support. Four days later, the court set the matter down for hearing March 4 on the motion for preliminary injunction, and granted leave to defendant to file a memorandum in opposition exceeding the fifteen page limit prescribed by the local rules. On February 14, defendant moved for the convening of a three-judge court. After briefing and argument by the parties, the court denied that motion for the principal reason that plaintiffs seek an injunction against the enforcement of federal administrative regulations as opposed to an underlying enabling statute. A hearing on the motion for preliminary injunction was held from March 4 through March 7, at the completion of which the court ordered the parties to file, contemporaneously on March 21, proposed findings of fact and conclusions of law, and memoranda in support thereof. Also at the close of the hearing, plaintiffs moved for a temporary restraining order pending decision on the motion for a preliminary injunction. On March 10, defendant filed a memorandum in opposition to the motion for a temporary restraining order pursuant to his request for leave to submit written opposition to that motion. Shortly after submission, with respect to the motion for preliminary injunction, of the proposed findings of fact and conclusions of law and supporting memoranda, counsel for the Secretary advised the court by letter that the original February 1 effective date had been amended to July 1, 1975. On April 15, the court held a hearing for consideration of the question whether, in view of the amended effective date, the issues raised by the motion for preliminary injunction were ripe for judicial determination and on April 18, the parties filed memoranda on the issue. On May 14, plaintiffs filed their motion for summary judgment, and the following week, on May 23, defendant filed his cross motion for summary judgment.

Enactment of Medicare and Medicaid into the Social Security Act established the federal government as the largest health insurer in the United States. Established under Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., Medicaid is a federal-state matching funds program providing medical assistance to elderly, blind, disabled and other individuals with insufficient resources to meet the cost of necessary medical care, as well as families with dependent children. Medicare is a federally funded and administered program created by Title XVIII of the Social Security Act providing hospital and outpatient insurance benefits to elderly persons. Principally to reduce the rising costs of these programs, the Secretary promulgated the challenged regulations. As the court has noted, the regulations require hospitals to implement by July 1, 1975, a "utilization review" procedure under which a committee of two or more physicians, "with the participation of other professional personnel," determines, within 24 hours or one working day, whether the admission of a patient is "medically necessary." Findings by the committee that admissions are not "medically necessary" result in denial of Medicare or Medicaid reimbursement.

## I.

### Standing and Ripeness

#### A.

##### Standing

The Secretary asserts that, with respect to the American Medical Association, the complaint alleges solely that the AMA is an association of state medical societies in the United States, and contends that this allegation is insufficient, under Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), to establish the AMA's standing to sue. More specifically, defendant contends that because the complaint lacks allegations that the AMA itself will be injured and that any of the plaintiffs are members of the AMA, it necessarily lacks an allegation that any member of the AMA is, or will be, injured by the regulations under attack. Defendant maintains also that the allegations of the complaint are insufficient to establish the standing of the patient plaintiffs.

As a practical matter, a ruling on the standing of the American Medical Association may be of small consequence, for the court holds that the patient plaintiffs have standing in any event. See, e. g. Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), one of the two recent abortion decisions by the Supreme Court, in which the Court observed that "[i]nasmuch as Doe and her class are recognized, the question whether the other appellants— physicians, nurses, clergymen, social workers, and corporations—present a justiciable controversy and have standing is perhaps a matter of no great consequence." 410 U.S. at 188, 93 S.Ct. at 745.

▮ In the first paragraph of the complaint, all plaintiffs allege that the action arises in part under the Administrative Procedure Act, 5 U.S.C. § 551 et seq. Section 10(a) of the Act, 5 U.S.C. § 702, provides that a person suffering legal wrong, or "adversely affected" or "aggrieved" by agency action within the meaning of a relevant statute, is entitled to judicial review of that action. Recently, in United States v. SCRAP, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), the Supreme Court restated with clarity the requirements for standing under the Administrative Procedure Act as announced the previous year in Sierra Club v. Morton. In *SCRAP*, the Court stated that standing is conferred upon those who can show that the challenged action had caused them "injury in fact," and "where the alleged injury was to an interest 'arguably within the zone of interests to be protected or regulated' by the statutes that the agencies were claimed to have violated." 412 U.S. at 686, 93 S.Ct. at 2415. Articulating precisely what allegations are required, the Court went on to state that "[a] plaintiff must allege that he has been or will in fact be *perceptibly harmed* by the challenged agency action . . . ." *Id.* at 688, 93 S.Ct. at 2416. (emphasis supplied). Here, the patient plaintiffs allege that the regulations will interfere with their right to be hospitalized in accordance with the best judgment of their respective physicians, will reduce the quality of medical care because non-medical matters will complicate the decision to hospitalize, and delay admissions, to the detriment of their health and proper treatment.

These allegations, which, at the very least, assert "perceptible harm," are more specific than those held sufficient in *SCRAP*. In that case, the plaintiff *SCRAP* (Students Challenging Regulatory Agency Procedures), an unincorporated association of five law students, claimed, *inter alia*, that the use by each of its members of forests, streams, mountains and other resources was disturbed by the adverse environmental impact "caused by the nonuse of recyclable goods brought about by a rate increase on those commodities." 412 U.S. at 685, 93 S.Ct. at 2415.

It is, moreover, evident that the interests of the plaintiff recipients of Medi-

care and Medicaid benefits are arguably within the zone of interests sought to be regulated or protected. The programs exist to serve them. Their allegations are, therefore, sufficient to confer standing under § 10(a) of the Administrative Procedure Act to challenge the action of the Secretary in promulgating the regulations.

■■ The complaint is likewise sufficient to establish the standing of the American Medical Association and the physician plaintiffs. Sierra Club v. Morton requires that a party seeking review of administrative action must allege that he himself has suffered injury. The Supreme Court stated in that case that "[i]t is clear that an organization whose members are injured may represent those members in a proceeding for judicial review." 405 U.S. at 727, 92 S. Ct. at 1368, *citing* NAACP v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). In Sierra Club v. Morton, the Court held that because the plaintiff Sierra Club had failed, in its complaint seeking to enjoin federal officials from approving development of a resort in a region of great natural beauty, to allege that it or any of its members would be affected by the development, it lacked standing to challenge the administrative action.

Here, the AMA and the physician plaintiffs have alleged more than the mere "special interest" held insufficient to confer standing on the Sierra Club. The physicians allege that the regulations unlawfully interfere with the doctor-patient relationship and the right of a physician to practice medicine according to his best medical judgment. The regulations, they aver, will " . . . unlawfully 'chill,' deter, and otherwise interfere with attempts by physicians to treat their patients in a manner dictated by the medical needs of the patients." They complain that contrary committee decisions may subject them to malpractice actions and other damage proceedings based on committee findings and will expose them to damage to their professional reputations. These allegations reflect, moreover, interests arguably within the zone of interests sought to be regulated or protected. The Secretary has indicated that one of the purposes of the regulations is to improve the quality of medical care. The physicians perform most of the services the costs of which the Secretary has sought to reduce.

While it is true, as the Secretary points out, that nowhere in the complaint do the five physician plaintiffs indicate that they are members of the American Medical Association, two of them, James H. Sammons, M.D., and Frank J. Jirka, M.D., set forth their membership in affidavits attached to the complaint. When the Supreme Court decided Sierra Club v. Morton, it looked to "pleadings or affidavits;" 405 U.S. at 735, 92 S. Ct. 1361. Plaintiff, Risher Watts, M.D., moreover, testified that he is a member of the AMA.

Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), has minimal application to the physician plaintiffs in the case at bar. In that case, the plaintiff doctor was under state criminal indictment for violation of the same statute he sought to challenge in the federal court. The Supreme Court held that he had made no allegation of a threat to any federally protected right that could not be asserted in defense of the state court prosecution.

### B.

#### Ripeness

There is no disagreement that the legal issues in this action present a "case or controversy" within that requirement of Article III of the United States Constitution. In view of the postponement of the effective date of the regulations from February 1 to July 1, 1975, however, the Secretary questions the propriety of a motion for preliminary injunction prior to July 1. The injunction is sought against enforcement of the challenged regulations. Since there can be no enforcement prior to the ef-

fective date, the Secretary argues, an order of preliminary injunction at this time would be a meaningless act. Traditionally, the question thus presented has been cast in terms of "ripeness," or the timing of judicial review.

■ The power of the district court to review an administrative regulation prior to enforcement is well-settled. *See,* Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Village of Euclid v. Amber Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); Abbott Laboratories, Inc. v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1966). *See also* Public Utilities Commission v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958). Whether challenge to the regulation is "ripe" depends on whether the issues tendered are appropriate for judicial resolution, and the hardship to the parties of withholding judicial consideration. Abbott Laboratories, Inc. v. Gardner, *supra. See also,* Toilet Goods Ass'n, Inc. v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1966).

In Pierce v. Society of Sisters, *supra,* the Supreme Court affirmed, on June 21, 1925, a preliminary injunction against the enforcement of a statute that would not become effective until September 1, 1926. There, the Court found that the statute, which required parents to send children of certain ages to public schools, caused present irreparable harm to private schools. *See also,* Flemming v. Florida Citrus Exchange, 358 U.S. 153, 79 S.Ct. 160, 3 L.Ed.2d 188 (1958); Textile and Apparel Group v. FTC, 133 U.S.App.D.C. 353, 410 F.2d 1052 (1968), cert. denied, 396 U.S. 910, 90 S.Ct. 223, 24 L.Ed.2d 185 (1969).

In Abbott Laboratories, Inc. v. Gardner, *supra,* the court upheld pre-enforcement permanent equitable relief against the Secretary of the Department of Health, Education & Welfare. There, plaintiff drug manufacturers challenged regulations requiring that the "established name" of a drug accompany each appearance on a label of a proprietary name. The Court held that the impact of the regulations was "sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." 387 U.S. at 152, 87 S.Ct. at 1517. The Court went on to quote the following from the opinion of the district court: "[e]ither they [the plaintiff manufacturers] must comply with the every time requirement and incur the costs of changing over their promotional material and labeling or they must follow their present course and risk prosecution." *Id., quoting,* D.C., 228 F.Supp. 855 at 861.

In his treatise on administrative law, Professor Kenneth Culp Davis characterized as "clearly unsound," the "easy assumption that a statute cannot be ripe for challenge until it has been applied by an administrator . . . in a concrete case." 3 Davis, Administrative Law Treatise, § 21.03 (1958). The reason is that "enforcement" may occur through the actions of private parties as well as the promulgating official or agency.

That is precisely what is occurring with respect to the regulations now before the court. Risher Watts, Jr., M.D., one of the physician plaintiffs and medical director of two Chicago hospitals serving primarily Medicare and Medicaid patients, testified that his hospitals have begun to implement the challenged regulations. Moreover, the notices of the amended effective date contained the following statement:

> The Department wishes to emphasize that it expects all facilities participating in Medicare to be in *full compliance* with these regulations on July 1, 1975. Facilities *should not abate their efforts* to develop criteria and programs to comply with these regulations as a result of the change in effective date. (emphasis supplied).

40 F.Reg. 14591. The notice with respect to the Medicaid regulations is, with the exception of its reference to Medicaid instead of Medicare, identical. 40 F.Reg. 14597. Furthermore, in what

appears to be an undated departmental memorandum of the Social Security Administration, the following is stated:

> The regulations now are to be *implemented* by the new effective date, i. e. hospitals will be expected to be actually reviewing admissions and assigning extended stay review dates in accordance with the new requirements by July 1, 1975. (emphasis originally included).

 As the court noted earlier, the parties agree that the legal issues presented are justiciable. The regulations having been promulgated, published in the Federal Register, and an effective date having been set, agency action is "final" within the provisions of § .10 of the Administrative Procedure Act. The basic rationale of the ripeness doctrine is, in the words of Justice Harlan,

> . . . to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

Abbott Laboratories v. Gardner, *supra*, 387 U.S. at 148–149, 87 S.Ct. at 1515. There is no "abstract disagreement" here over the motion for preliminary injunction; hospitals are implementing the challenged regulations. As will appear more fully in the discussion to follow, the risks of withholding judicial consideration of this motion are substantial. It is, therefore, "ripe" for adjudication by this court.

## II.

### Merits of the Motion for Preliminary Injunction

 Plaintiffs move for a preliminary injunction against the enforcement of the challenged regulations pending disposition of the case on the merits. The motion is addressed to the discre-

tion of the trial court. Doeskin Products v. United Paper Co., 195 F.2d 356 (7th Cir. 1952). The purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits. *Id.* In this circuit, the "status quo" has been defined as the last uncontested status preceding the pending controversy. Westinghouse Electric Corporation v. Free Sewing Machine Co., 256 F.2d 806 (7th Cir. 1958). Decision on an application for preliminary injunction is predicated on a balancing, or, as one court observed in Perry v. Perry, 88 U.S.App.D.C. 337, 190 F.2d 601, 602 (1951), a "series of estimates," of the following factors: first, irreparable injury to the plaintiff if the injunction does not issue; second, a balance of hardship and inconvenience in favor of the plaintiff; and third, a likelihood of success on the merits. Doeskin Products v. United Paper Co., *supra*. The public interest must be considered in balancing the relative hardship when the action is not limited to private parties. See, e. g., the Steel Seizure Case, Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L. Ed. 1153 (1952). A court does not, in its ruling on an application for preliminary injunction, " . . . determine any controverted right, but [if the application is allowed], prevent[s] a threatened wrong or any further perpetration of injury, or the doing of any act pending the final determination of the action whereby rights may be threatened or endangered . . . ." Benson Hotel Corp. v. Woods, 168 F.2d 694, 696 (8th Cir. 1948), quoted by the Court of Appeals for the Seventh Circuit in *Doeskin*. The most important writ to issue from the civil side of the district courts, a preliminary injunction is not lightly to be granted. See, e. g., Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319 (2nd Cir. 1969). No one can doubt that its importance is amplified when the health of persons is at stake on the one hand, and the abrupt halt to the enforcement of an entire federal regulatory scheme on the other.

At the outset, the court observes that it is not, for purposes of this application, impressed by the arguments of the physician plaintiffs that contrary findings by review committees will irreparably damage their professional reputations or expose them to malpractice actions. There is no clear showing that a doctor's reputation will suffer as a result of a finding at variance with his initial determination, and disagreement among professionals more often than not contributes to considered resolution of a particular problem. And, while this court is most sympathetic to the extensively publicized malpractice issue, it may not as a matter of law predicate a preliminary injunction on suits which at this point are not shown to be on file or even threatened. It is not clear, moreover, that the findings of a review committee would be admissible in a malpractice action. This, however, is by no means the end of the matter.

As the Secretary has repeatedly emphasized, the challenged regulations by their terms do not deny admission of any patient into the hospital. The consequence of a finding by the committee that an admission is not "medically necessary" is termination of Medicare or Medicaid reimbursement. The testimony, however, shows that the prospect of twenty-four hour admission review will result in decisions by doctors not to admit patients when early diagnosis is inconclusive. According to the testimony, therefore, the practical effect of the regulations is to deny admission, even if the terms of the regulations do not.

Frank Jirka, M.D., a urologist and member of a review committee at a Chicago hospital, stated frankly that the regulations will cause him not to admit patients when the diagnosis is unclear. Both Dr. Jirka and Dr. Watts, to whom the court referred earlier, emphasized the impossibility of adequate testing within a twenty-four hour period, and the consequent difficulty of arriving within twenty-four hours at a sufficient-

ly accurate diagnosis upon which to justify admission to a review committee. They expressed a belief that a contrary committee decision within twenty-four hours would cause patients to lose the confidence in the judgment of the attending physician, which, the doctors testified, is indispensable to effective treatment. The effect of the regulations, the physicians indicated, was to complicate, to the detriment of the patient's health, a physician's decision to admit a patient to the hospital. Dr. Jirka recalled an instance in which a patient complained of a kidney ailment that normally does not require hospitalization, but where, on the basis of professional intuition and experience, he nevertheless admitted the patient. After extensive testing, Jirka testified, " . . . a brain tumor was found, and in addition to this, a silent malignant tumor of the stomach was found. By a 'silent malignant tumor' is meant one that does not express itself in the way of symptoms." Jirka stated that under the regulations, he would not have admitted the patient.

There is no indication that an over-65 indigent recipient of Medicare or Medicaid, if not admitted under these programs, could otherwise pay for the hospitalization prescribed by the attending doctor. If a patient who cannot pay cannot as a result of the regulations be hospitalized when diagnosis is unclear, the potential injury to the patient's health may be irreparable.

One of the witnesses for the Secretary, Dr. Boyden, testified that, on the basis of his experience with a state twenty-four admission review plan, the regulations will not inhibit "medically necessary" admissions. This overlooks the testimony of the plaintiff physicians as to the difficulty of arriving, within twenty-four hours, at a sufficiently accurate diagnosis upon which to justify an admission on the basis of "medical necessity."

The Secretary replies that the review process will be delayed in cases of un-

clear diagnosis because the regulations accord, at least with respect to the Medicare program, the attending physician an opportunity to present his views prior to final determination by two physicians if initially there is reason to believe that the admission is not medically necessary. 20 CFR §§ 405.1035(f)(5); 405.1035(d)(4). The final determination in this instance must, nevertheless, occur within a two day period, which, depending on the particular case, may be no more adequate for sufficient testing than the twenty-four hour period.

Against the potential injury to health that may result from a decision by an attending physician faced with twenty-four hour review not to admit a patient, the Secretary would balance the public interest in the costs savings that the regulations are designed to produce. One difficulty with this argument is that it assumes the validity of the regulations, for if ultimately they are declared invalid after the effective date and a preliminary injunction has not issued, the Secretary will actually have incurred expense in enforcing the regulations, and the hospitals will have implemented unlawful review plans to the detriment of themselves and the health of patients who were not admitted as a result of these plans.

The testimony establishing the potential of irreparable injury to patients if a preliminary injunction does not issue suggests a likelihood of success on the merits, quite apart from plaintiffs' principal constitutional argument, sufficient to warrant the exercise of this court's equity power.

Under § 1902(a)(19) of the Social Security Act, a Medicaid plan for medical assistance must

> . . . provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided in a manner consistent with simplicity of

> administration and the *best interests of the recipients;* (emphasis supplied).

42 U.S.C. § 1396a(a)(19). If the effect of twenty-four hour admission review, which was promulgated under the Medicaid program, is as the physician plaintiffs testified, to keep patients in need of hospitalization out of the hospital, the plan cannot be in "the best interests of the recipients," or, therefore, consistent with § 1396a(a)(19).

While § 1861(k) of the Social Security Act, 42 U.S.C. § 1395x(k), appears to confer upon the Secretary authority to incorporate into the Medicare program review procedures established under Medicaid, § 1861(k) cannot confer authority to incorporate an invalid Medicaid review plan, that is to say, a review plan inconsistent with the "best interests of the recipients" under 42 U.S.C. § 1396a(a)(19). Moreover, Medicare section 1801 of the Social Security Act, 42 U.S.C. § 1395, provides that

> Nothing in this subchapter shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided . . . .

If the regulations do in fact produce decisions by doctors not to admit, the Secretary by promulgating them has "exercis[ed] . . . supervision or control over the practice of medicine."

These same considerations raise a serious question of whether the regulations are "reasonably related to the purposes of the enabling legislation under which [they were] promulgated." Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 280–81, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1968); Johnson's Professional Nursing Home v. Weinberger, 490 F.2d 841 (5 Cir. 1974). Quite clearly, one of the principal purposes of the regulations is to reduce rapidly rising costs of federal health

insurance. Equally clearly, however, the larger purpose of the Medicare and Medicaid programs, i. e., the enabling legislation, is the delivery of medical services to those otherwise unable to obtain them. If twenty-four hour review of admissions frustrates reasonable judgment regarding the medical necessity of hospital admissions because of an insufficient period for adequate testing, or committee composition of persons who are not doctors or of doctors who have had no personal contact with the Medicare or Medicaid patient seeking admission, or if patients requiring hospitalization are prevented from obtaining it, this larger goal is thwarted. While the court in *Johnson's Nursing Home* upheld the HEW regulations under attack in that case, it observed that the plaintiff "failed to show in district court that the challenged regulation would result in the denial of nursing home services to eligible persons." 490 F.2d at 845. The evidence thus far admitted in the case at bar points to an opposite conclusion.

With respect to an application for preliminary injunction, Judge Jerome Frank observed:

> . . . [I]t is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i. e., balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.

Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2nd Cir. 1953). The question whether the twenty-four hour review of the medical necessity of the admission of every patient is reasonably related to the purposes of the enabling legislation is "substantial," and "difficult." And if that question can be char-

acterized thus, the plaintiffs' constitutional argument that the regulations interfere, contrary to the First, Fifth, and Ninth Amendments, with a physician's right to practice medicine in accordance with his best medical judgment and a patient's right to be treated according to the best medical judgment of his attending physician is likewise "substantial," and "difficult." It is also sufficiently uncertain as to make it "fair ground for litigation and thus for more deliberate investigation." *Id.* The court notes, without intimating any ultimate decision, that the consequence of violating the state abortion statute in Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), a decision heavily relied upon by plaintiffs, was criminal prosecution of the performing doctor, not denial of reimbursement under a social welfare program. See, Association of American Physicians and Surgeons et al. v. Weinberger, 395 F. Supp. 125 (N.D.Ill.1975) (Pell, Lynch, McMillen, JJ.).

The wiser exercise of this court's discretion is the issuance of a preliminary injunction pending disposition on the merits. The risk of irreparable injury to the health of patients outweighs any hardship to defendant. A preliminary injunction will not only vitiate that risk, but also prevent the expenditure now of federal funds on a program that ultimately may be declared invalid. And if the Secretary should prevail on the merits, he can thereafter proceed to enforce the regulations with confidence in their validity.

Accordingly, the application of plaintiffs for a preliminary injunction will be allowed. A preliminary injunction will, therefore, issue forthwith prohibiting the defendant Secretary of the Department of Health, Education & Welfare from in any way enforcing or implementing 20 CRF § 405.1035(e)(f) and 45 CFR § 250.19(a)(1)(viii), pending the disposition of this case on the merits. Because the motion of the plaintiffs for

a temporary restraining order pending decision on plaintiffs' motion for preliminary injunction is now moot, the motion for a temporary restraining order will be denied. This memorandum of decision is intended to satisfy the provisions of Rule 52(a) of the Federal Rules of Civil Procedure requiring the court to set forth its findings of fact and conclusions of law constituting the grounds for its action.