### ROSE v. CONNELLY et al.

District Court, S. D. New York.
March 14, 1941.

On Reargument April 5, 1941.

George E. Carmody, of New York City, for plaintiff.

Howard E. Reinheimer, of New York City, for defendants Marc Connelly and Arthur Kober.

Irving Cohen, of New York City, for defendant Mitchell Grayson.

CLARK, Circuit Judge (sitting as District Judge pursuant to statutory designation).

The claim of plagiarism herein seems to me quite fantastic. The two plays differ in plot, in character interest, in background, in general purpose and intent—in short, in substantially all points of reader or theatre interest. Plaintiff's lugubrious drama has a somewhat pretentious, though not unified, story. First we find the heroine and her employer in his business office arranging a mutual seduction; next we find her as mistress of his home, where he dies suddenly as his wife returns. Then in the second act the scene shifts to a summer bungalow, where the heroine, admitting further promiscuous sex experimentation, is rejected as tarnished by the young man who was seemingly to be hero number two. Eventually she is accepted by the son of her original employer, who has appeared incognito about the middle of the play. The locale of the latter part of the play has no particular significance or interest; true, the heroine jumps or lands in the lake for an apparently unmotivated suicide, but any other device of destruction would have served as well or ill.

On the other hand, defendants' play has a simple and unassuming love story, set at a summer camp, between a New York stenographer and a law graduate waiter who meet, fall in love, and after lovers' tiffs finally decide to marry, notwithstanding their poverty. It is effective, however, as a vehicle for the real appeal of the play, which is the humor and wit developed from placing a large group of presumably typical New Yorkers from the Bronx—speaking a rich dialect euphemistically termed New Yorkese—in the midst of the turmoil of this ludicrously overadvertised camp. True, the heroine does take an early morning dip in the lake as a means of concealing from her boy friend that she has been compelled—by circumstances —to spend the night chastely in another's bungalow. But lakes and ultimate wedding bells are hardly the exclusive property of any one author. Even had there not been this complete disparity of character and incident, one would still hesitate to concede infringement of plaintiff's sombre product, so lacking in all the sparkle and wit which gives defendants' play lift and vigor and which is authentic skill. Dorothy Parker is reported to have said of the defendant author in another connection that "the lovely precision" of his ear and "the dogged faithfulness of his pen" have made impure pronunciation impossible, so that a reader or hearer "will speak the Bronx language not like a native, but as one." That is his original possession, disclosed in stories and articles long before plaintiff's piece was written.

Plaintiff's able brief does assert many identities of detail; but these are rather

a tribute to his ingenuity than an accurate reflection of reality. Since trial has been set for next week, decision cannot be delayed for the discussion of each of these claims, nor would any good purpose be served thereby. But a fair example of the method is the attempted assimilation of the employer appearing at the beginning of plaintiff's play, to the former. fiancé appearing briefly at the end of defendants' play (in so minor a fashion that he disappears altogether in some of the versions before the court). Since the two characters are not alike, plaintiff under the heading "Splitting Special Characterizations" tries to show that the personal characteristics of plaintiff's character are split among more than one of defendants' characters. With this method of resolving troublesome differences, hardly any drama since the Garden of Eden could survive the charge of plagiarism.

On these motions for summary judgment and pursuant to Federal Rule 56(c), 28 U.S.C.A. following section 723c, I have examined the depositions of the principals on their examination before trial, the extensive pleadings, including plaintiff's detailed bill of particulars, the two plays, with the several versions of defendants' play, the book and the articles by the defendant author from which he claims his idea was developed, and the complete briefs of the parties. A trial will develop nothing more except possibly further exploration of the matter of defendants' access to plaintiff's play, and material bearing on defendants' defenses of laches and estoppel. Even as to these issues the extensive depositions suggest that little, if anything, more can be added. In any event, everything possible to assist decision on the main issue is before me; and the result seems free from doubt. The showing of access appears as at best doubtful, though I have not felt it necessary to reach a conclusion on that matter, since I fail to see that in any event anything was purloined from plaintiff's composition.

Defendants have submitted their claims for counsel fees, with some brief oral suggestions. I conclude that the amounts hereafter indicated are reasonable and just.

■ Plaintiff's motion for summary judgment is denied; defendants' motions for summary judgment are granted with costs and with counsel fees of $1,000 to defendants Connelly and Kober and of $200 to defendant Grayson.

### On Reargument.

■ Upon plaintiff's motion, reargument by affidavits and memoranda of the parties was granted on the allowance of counsel fees of $1,000 to defendants Connelly and Kober. Plaintiff asks modification of the allowance, primarily on the ground that these defendants at one time agreed to arbitration. Refusal to arbitrate an unfounded claim is hardly prejudicial; the only question is whether the defendants, by declining to carry out tentative agreements, forfeited such equities as they had had. If the allowance had been punitive in nature, this contention might have merit. But I definitely tried to arrive at only a fair fee fairly earned, since, generally speaking, that, rather than a punitive award, seems to me more consonant with the authorization in 17 U.S. C.A. § 40 of "a reasonable attorney's fee."

■ Having in mind elements heretofore considered appropriate—compare Lewys v. O'Neill, D.C.S.D.N.Y., 49 F.2d 603; Lowenfels v. Nathan, D.C.S.D.N.Y., 2 F.Supp. 73—including the monetary amount involved, the amount of work necessary and done, the skill employed, and the result achieved, the award still seems to me moderate and reasonable. The stakes herein were large, in view of the success of defendants' play. The work done involved practically complete preparation for trial on both the facts and the law, and in effect partial trial in the examinations of the parties. A full trial would have called for little more work or time, since the proceedings actually had fully developed the various issues. Plaintiff's very assiduity of attack, including his printed brief of ninety-seven pages, called for like spirited measures of defense, with extensive brief and reply brief. Whether or not defendants would have been successful on a mere motion to dismiss, the fact that the Circuit Court of Appeals has questioned this course justified defendants in awaiting the more complete remedy of summary judgment after the parties' examinations had been had.

Upon this reargument, therefore, the motion for modification of the allowance is denied. A judgment in the terms of the original decision has been signed and is filed herewith.