**IDEAL TOY CORPORATION, Plaintiff-Appellee,**

v.

**SAYCO DOLL CORPORATION, Defendant-Appellant.**

**No. 87, Docket 26918.**

United States Court of Appeals
Second Circuit.

Argued Nov. 28, 1961.

Decided April 3, 1962.

---

Harry Price, New York City (Dean, Fairbank & Hirsch, and Arthur B. Colvin, New York City, on the brief), for defendant-appellant.

Sidney P. Howell, Jr., New York City (Regan Goldfarb Powell & Quinn, New York City, on the brief), for plaintiff-appellee.

Before CLARK, HINCKS and KAUFMAN, Circuit Judges.

HINCKS, Circuit Judge.

We have before us an appeal from Judge Dimock's order granting a preliminary injunction and an appeal from Judge Bryan's denial of a motion to vacate or modify the injunction.

Plaintiff Ideal brought the original action against Sayco on December 7, 1960, claiming that defendant's "Chubby Toddler" doll was copied from plaintiff's copyrighted "Saucy Walker." Judge Dimock, in an unreported order, granted a preliminary injunction on December 15, 1960. The evidence before Judge Dimock consisted of the Sayco doll, the Ideal doll, the Ideal copyright, and the self-serving affidavits of the parties. He found that "A visual comparison between copies of plaintiff's SAUCY WALKER doll and defendant's CHUBBY TODDLER doll establishes that the head of defendant's doll incorporates so many distinctive features and characteristics of the head of plaintiff's doll as to lead to the conclusion *prima facie* that defendant's doll head was copied from plaintiff's * * *." Sayco appealed.

 Judge Dimock's factual finding of similarity and probable copying, while not necessarily one we would make ourselves, certainly was not clearly erroneous within the meaning of Rule 52(a), Fed.Rules Civ.Proc., 28 U.S.C.A. And to the extent that the granting of a preliminary injunction is a matter for the trial court's discretion, see Perry v. Perry, 88 U.S.App.D.C. 337, 190 F.2d 601, 602 (1951); Doeskin Products v. United Paper Co., 195 F.2d 356 (7th Cir. 1952); 7 Moore, Federal Practice ¶ 65.04 [2] (2d ed. 1955), we cannot say that, on the evidence before him, Judge Dimock's order was an abuse of discretion. It is affirmed.

Subsequent to the granting of the preliminary injunction, on March 3, 1961, Sayco filed an answer and counterclaim,.

adding as a defendant to the counterclaim the Goldberger Doll Manufacturing Company. Sayco charged that Goldberger and Ideal had conspired to suppress the fact that the disputed doll head was in the public domain, and to set up a monopoly. The nature of this claim became clearer on June 15, when Sayco, moving before Judge Bryan to vacate the injunction, claimed that Goldberger had marketed an uncopyrighted doll, more similar to Sayco's than to Ideal's, prior to either's entry into the market; that Ideal had filed a complaint against Goldberger but that the complaint had been dropped in pursuance of a "deal" between Ideal and Goldberger. By the deal, the latter would suppress its doll, the better for Ideal to acquire a monopoly of all similar doll heads. Judge Bryan denied this motion and from this order also Sayco appeals.

It was proper, to be sure, for Judge Bryan to take jurisdiction of the motion pursuant to Rule 62(c), Fed.Rules Civ. Proc., which permits modification of injunction orders during the pendency of an appeal. But this rule is described as "merely expressive of a power inherent in the court to preserve the *status quo* where, in its sound discretion, the court deems the circumstances to justify." 7 Moore ¶ 62.05; see United States v. El-O-Pathic Pharmacy, 192 F.2d 62 (9th Cir. 1951); Shinholt v. Angle, 90 F.2d 297, 298 (5th Cir.), cert. denied 302 U.S. 719, 58 S.Ct. 40, 82 L.Ed. 555 (1937).

■■ Of course, absent an appeal, a district court has complete power over its interlocutory orders. John Simmons Co. v. Grier Bros., 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475 (1922); 7 Moore ¶ 60.16 [4]. And, absent an appeal, it lay within the discretion of the district court to consider newly presented evidence, such as the Goldberger doll. Marconi Wireless Telegraph Co. v. United States, 320 U.S. 1, 46–49, 63 S.Ct. 1393, 87 L.Ed. 1731 (1943).

■■ Once the appeal is taken, however, jurisdiction passes to the appellate court. Thereafter the appellant is not usually entitled as of right to present new evidence or argument to the trial court, which in the exercise of a sound discretion will exercise jurisdiction only to preserve the *status quo* as of the time of appeal. Appellant's proper procedure is then to request leave of the court of appeals to proceed in the lower court. He need not even dismiss his appeal, for we have always been ready to suspend proceedings while new matter was introduced below. See, e. g., Triumph Hosiery Mills, Inc. v. Triumph International Corp., 191 F.Supp. 937 (S.D.N.Y. 1961). But absent permission of the appellate court to reopen, sound judicial administration demands that unless the judge is satisfied that his order was erroneous he shall use his power under Rule 62(c) only to preserve the status of the case as it sits before the court of appeals. The right of a defendant to full hearing on the merits coupled with the interim protection afforded by the bond required under Rule 65(c), will generally suffice for the accomplishment of justice without the delays resulting from vacillating rulings.

■ Under the circumstances here, we think Judge Bryan could not properly change the whole posture of the case on appeal by vacating Judge Dimock's injunction. Thus Judge Bryan's order denying the motion was nonetheless right, though based on an erroneous belief that the injunction was a "final" judgment or order within the purview of Rule 60(b).

Affirmed as to both orders.

CLARK, Circuit Judge (dissenting).

The opinion's concern solely with matters of procedure, including its retreat behind the assumed discretion of the trier, serves to mask the fact that here is being sustained a monopoly of unique and disturbing character. True, the subject matter—toy dolls—is not extensive; but the holding makes up in depth what it may want in extent. In the American concern for free competition I know of no limitation because of the comparatively limited nature of the field involved.

So our first question—one not directly considered in the opinion—must be whether the plaintiff has brought its product within the coverage of a statutory exception permitting a temporary monopoly, here that of copyright. My brothers' reliance upon trial court discretion is therefore definitely out of place on the basic issue whether or not the plaintiff has a property right requiring protection against this defendant. For we have reiterated, indeed recently, that the question of legal right of a plaintiff must be reviewed on appeal from a grant of a preliminary injunction; and such right cannot be accepted as a mere matter of trial discretion. See, e. g., Ring v. Spina, 2 Cir., 148 F.2d 647, 160 A.L.R. 371; Carroll v. American Federation of Musicians of United States and Canada, 2 Cir., 295 F.2d 484, 488–489; Empresa Hondurena de Vapores, S. A. v. McLeod, 2 Cir., 300 F.2d 222; Societe Comptoir De L'Industrie Cotonniere, etc. v. Alexander's Department Stores, 2 Cir., 299 F.2d 33. Thus looking at fundamentals, I am convinced that the injunction was improvidently granted. For what the plaintiff could not get under the patent law (as it in effect concedes by its course of conduct) it has succeeded in getting in three-to-fivefold measure under the copyright law.

Before turning to this important question of substantive law I have to note that even the procedure on the award of this injunction was faulty. The grant was made solely on the basis of the parties' self-serving affidavits (the nature of which I shall note below), plus the judge's look at the dolls, without oral testimony. This would seem to be a procedure more appropriate to a peremptory temporary restraining order, to be followed by later full hearings, F.R. 65(b), than to a mandate based on rather permanent property rights. Sims v. Greene, 3 Cir., 161 F.2d 87. Moreover, the findings are inadequate to support the relief. Thus the finding of copying here is based entirely upon a deduction from the assumed similarity of plaintiff's and defendant's dolls. And the finding on the crucial issue of copying is:

"4. A visual comparison between copies of plaintiff's Saucy Walker doll and defendant's Chubby Toddler doll establishes that the head of defendant's doll incorporates so many distinctive features and characteristics of the head of plaintiff's doll as to lead to the conclusion *prima facie* that defendant's doll head was copied from plaintiff's, and plaintiff not having authorized or otherwise licensed such copying, it is so found."

This indicates a partial copying of only certain features, and not a total reproduction, thus going into what plaintiff's affidavits concede to be "a very intangible matter," which I hope to demonstrate is inadequate to show plagiarism of copyrighted material.

Now turning to the substantive issue, it is obvious that the plaintiff's most natural appeal would be for a design patent giving a monopoly for different periods up to a maximum of fourteen years for a "new, original and ornamental design for an article of manufacture." 35 U.S.C. §§ 171, 172. But it is well known that manufacturers have been disappointed in this law, since almost no design patents have stood up in the courts, facing as they do the twin barriers of a showing of novel design and of infringement. See, e. g., Judge Kaufman's excellent opinion in Hygienic Specialties Co. v. H. G. Salzman, Inc., 2 Cir., 302 F.2d 614. So with the Supreme Court's recent rulings upholding copyright on many articles beyond writings there has been a shift to seek protection under the copyright laws, where incidentally the monopoly may be upheld for two terms of 28 years or a total of 56 years. All this has been pointed out in, e. g., Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co., 2 Cir., 260 F.2d 637, 642–644; and, indeed, we have upheld a copyright in an original "chimp" doll, Rushton Co. v. Vitale, 2 Cir., 218 F.2d 434. Thus it is possible that a plaintiff may secure a 56-year

monopoly by way of copyright *in an appropriate case.*

But the question what constitutes plagiarism surely requires careful analysis. For it cannot be that a plaintiff may secure a monopoly held unavailing under the patent laws by the mere device of a change of label by seeking copyright protection under another arm of the federal government. For the latter to be granted there must be a showing of appropriation by plagiarism or copying. It would seem clear that the copying must be of the article copyrighted, and not of some characteristic not going to make up the whole. Further, reproduction should be apparent on inspection and not be based upon a counting of similarities which do not constitute or leave a total impression of copying. Compare Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 2 Cir., 274 F.2d 487.

As Judge Dimock's finding, quoted above, shows, his conclusion is based on a combination of similarities, rather than a likeness of the whole article. And that is the way the case was presented to him on the affidavits. Most instructive is the affidavit of the plaintiff's designer, who naturally finds in a competing product as many elements copied from his brain child as a novelist habitually finds in another's novel, or a playwright in another's play, however fantastic be the claimed similarities. See Rose v. Connelly, D.C.S.D.N.Y., 38 F.Supp. 54, 55–56; Nichols v. Universal Pictures Corp., 2 Cir., 45 F.2d 119. Thus we must note from this affidavit: "The bodies, arms and legs are identical. * * * For example, the Saucy Walker doll has a very distinctive mouth which is characterized by a thin-lipped, quiet or hidden smile. This very subtle feature is exactly reproduced in the Chubby Toddler copy. Again, the set of the chin in Saucy Walk-

er, the length and rather flat shape of the upper lip and the particular shape of the area on the back of the neck which receives Ideal's copyright notice are quite peculiar to this doll and have been faithfully reproduced in defendant's Chubby Toddler doll." Etc. As I shall point out at once, these "subtle" features are not apparent in the total effect. But is it so that one gets a 56-year copyright in normal arms and legs of a doll or in a hidden smile? This gives plaintiff a destructive power against competitors of unexplored extent. For a grin or a smirk in their otherwise dissimilar product may turn out to make them accountable as infringers.

It seems clear that such compartmentalizing of copyright is both impracticable and unreal and that we must rather decide on the over-all identity of the products. Peter Pan Fabrics, Inc. v. Martin Weiner Corp., supra, 2 Cir., 274 F.2d 487. On this I have no hesitation in saying that there is no identity and not even enough similarity to show infringement, upon inspection either of the dolls or of the photographs of them attached to the complaint. Whatever unique quality plaintiff's doll may have, defendant has not appropriated it. Here we are more fortunate than was Judge Dimock, because we have before us a kind of control in the so-called Goldberger doll produced by a third manufacturer who also was sued by plaintiff, although suit has now been discontinued. For it is apparent that there is a much closer resemblance between the Goldberger and the defendant's doll than between either and the plaintiff's doll. This is well pointed out by an explicit statement by Judge Bryan on the further hearing in this case (discussed below) as quoted in the margin.[1] I do not see that this conclusion is directly challenged, as I believe it cannot be.

1. "I will be perfectly frank to say to you that to my somewhat ignorant eye on the subject of dolls, Mr. Price's [Sayco] doll looks a lot more like the Goldberger doll than it does like your [Ideal] doll. * * * And having examined both of those dolls, or all three of them, it seems to me that there was a very strong resemblance between the Goldberger and what I would call the Price doll, and relatively slight resemblance, comparatively, between your doll and either the Goldberger or the Price doll."

With differences so apparent when visual inspection of different dolls is had, the upholding of monopoly is dubious. The injunction has unfortunately maintained this dubious right unduly long; it should be reversed.

I could stop here, but I have to be concerned because in their haste to reach a quick decision on procedural grounds (a not unusual judicial practice, which is unfortunately inimical to the development of sound procedural rules), the majority have compounded an error on rehearing below by an error on appeal which is sure to haunt us hereafter. The defendant sought a rehearing by way of a motion to dissolve the injunction, particularly to bring up issues presented by the Goldberger doll which were not previously in evidence; and this came before Judge Bryan, who made the observation as to the merits quoted above. But eventually he ruled that he could not hear the new material because it did not satisfy the requirements of "newly discovered evidence." See F.R. 60(b). In this he was clearly in error; for the question before him was as to the equity of continuing a temporary injunction, F.R. 62(c), not of upsetting a final judgment. I take it my brothers concede this error; but instead of returning the issue for proper consideration below, they make the surprising holding, directly in the teeth of F.R. 62(c), that Judge Bryan did not have jurisdiction to consider the motion to dissolve because of an intervening appeal. F.R. 62(c) states that "[w]hen an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." This is the precise situation involved here; yet the majority finds that the rule does not apply. The rule is clear and unequivocal; I see no justification whatever for the novel and restrictive gloss now placed upon it by my brothers.

But even were we to accept, *arguendo,* their contention that the rule applies only to the issuance of orders designed to "preserve the status quo," Judge Bryan's exercise of jurisdiction was proper. Defendant applied for dissolution of the preliminary injunction because, it contended, the existence of the Goldberger doll demonstrated that the plaintiff's copyright was invalid, since the ideas were in the public domain. If this contention proved correct, dissolution of the preliminary injunction would have been necessary to preserve the status quo.

The purpose and sole function of a preliminary injunction is to preserve the status quo pending litigation. Hamilton Watch Co. v. Benrus Watch Co., 2 Cir., 206 F.2d 738; Doeskin Products v. United Paper Co., 7 Cir., 195 F.2d 356; 7 Moore's Federal Practice ¶ 65.04 [1] (2d Ed. 1955). Of course such an order in actual effect substantially alters the prior relations of the parties, so that the "status quo" that is actually preserved is one grounded on the court's estimation of the respective legal rights of the parties. Perry v. Perry, 80 U.S.App. D.C. 337, 190 F.2d 601. The injunction preserves what the court believes to be the lawful situation. Thus if for any reason the court were to change its estimation of the validity of plaintiff's case, its estimation of the *lawful* status quo would also change. In such a situation, dissolving the preliminary injunction would be the proper way of maintaining the correct state of affairs. Thus even under the majority's interpretation of Rule 62(c), Judge Bryan was right in exercising jurisdiction to consider defendant's claim.

I see, therefore, no basis for the rule now laid down that parties must seek leave of the Court of Appeals before raising questions of this nature with the district court. No rule commands such a practice, and no court has ever imposed such a limitation on the salutary functioning of Rule 62(c). I would hold that Judge Bryan had jurisdiction to consider this motion and that his disposition was erroneous, since it was not a question of

"newly discovered evidence." Hence on the appeals from each order there seems to me manifest error constituting also most troublesome precedents. The case cannot therefore be so simplified and peremptorily dispatched as my brothers attempt. Both orders should be reversed.